IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH ELLIOT, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 16-2076 |
| | : | |
| JOHN WETZEL, et al., | : | |
| | : | |
| Respondent. | : | |

**McHUGH, J.**                                                                  March 19, 2021

## MEMORANDUM

      This is a petition for habeas corpus. It began as a capital case, but Petitioner is no longer under a sentence of death. It arises out of a gruesome murder following a sexual assault. In a comprehensive and well-reasoned report, Judge Rice has correctly determined that Petitioner's claims lack merit. *See* R. & R. 44, ECF 51. I adopt his recommendation denying relief in full. Judge Rice also recommends that no certificate of appealability be issued. *Id.* There is one issue, not defaulted, that was subject to *de novo* review, as to which the law is somewhat unsettled. It relates to the use by the Commonwealth's expert witness of a lividity analysis performed by an investigator from the Medical Examiner's office. Petitioner contends that the denial of his ability to question that investigator violated his rights under the Confrontation Clause. Having considered the state of the law, as well as the evidence against Mr. Elliot, I also accept Judge Rice's recommendation as to appealability.

      The victim of the crime giving rise to this petition was at a nightclub before her death and spent the night at a man's home along with Petitioner. As all three engaged in intimate activity, the owner of the apartment passed out from intoxication, and awoke the next day to find

1

Petitioner gone and the victim's body on a couch.  He called police around 1:00 p.m.  Petitioner was ultimately charged with the murder and stood trial.  He testified that as best he could remember, he left the apartment where the victim was found around 10:00 a.m.  The Commonwealth then called City Medical Examiner Dr. Adrienne Sekula-Perlman in rebuttal, to fix the time of death within a range from 5:00 to 10:00 a.m.  In giving her testimony, Dr. Perlman relied upon a lividity analysis performed by an investigator from the Medical Examiner's Office.  Petitioner alleges that reference to those findings violated his rights under the Confrontation Clause of the Constitution.  *See* U.S. Const. amend VI, XIV; Obj. to R. & R. 43-47, ECF 57.

The most recent pertinent decision from the Supreme Court is *Williams v. Illinois,* 567 U.S. 50, 58 (2012).  *Williams* similarly involved a Confrontation Clause challenge to a medical expert's testimony.  *Id.* at 59-60.  The expert in *Williams* made reference to DNA evidence from a third party laboratory's test of vaginal swabs taken from a rape victim.  *Id.*  The Defendant argued that he should have been afforded the right to cross examine the third-party laboratory technician who conducted the test.  *Id.* at 62-63.  The Supreme Court, in a plurality opinion, disagreed.  *Id.* at 86.

To frame the issue, it is helpful to begin with how the plurality in *Williams* summarized the state of the law up until that point:

> Before *Crawford*, this Court took the view that the Confrontation Clause did not bar the admission of out-of-court statements that fell within a firmly rooted exception to the hearsay rule . . ., but in *Crawford*, the Court adopted a fundamentally new interpretation of the confrontation right, holding that "[t]estimonial statements of witnesses absent from trial [can be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."

2

*Williams*, 567 U.S. at 50 (citing *Crawford v. Washington*, 541 U.S. 36 (2004). The *Williams* Court then went on to summarize more recent developments in *Melendez–Diaz v. Massachusetts* and *Bullcoming v. New Mexico*, two cases decided in the wake of *Crawford*. *Id.* at 66 (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011)). Those cases both involved Confrontation Clause challenges to the use of scientific reports; the Court ruled that those reports "could not be used as substantive evidence against the defendant unless the analyst who prepared and certified the report was subject to confrontation." *Id.* (citing *Melendez-Diaz*, 557 U.S. 305 and *Bullcoming*, 564 U.S. 647).

Yet the facts in *Williams* were different than those in *Melendez-Diaz* and *Bullcoming*, because the DNA analysis at issue was never admitted into evidence—its contents came in through the testimony of an expert, as is the case here. *Id.* at 59-60. On those facts, the Supreme Court held that there was no violation of the Confrontation Clause, but without a majority opinion. *Id.* at 86. The plurality of four justices who voted to deny relief rested their conclusion on two independent foundations: 1) the DNA report was not introduced for the purpose of proving the truth of the matter asserted—in other words, it was not introduced as "substantive evidence to prove where the DNA profiles came from," but rather, to set forth one of the assumptions on which the witness' expert opinion was based, *Id.* at 72; and 2) the primary purpose of the third party's work in collecting that evidence was "to catch a dangerous rapist who was still at large, not to obtain evidence for use against petitioner, who was neither in custody nor under suspicion at that time," and so it could not be considered testimonial. *Id.* at 84-85. Justice Thomas, in his concurrence, stated that his agreement with the Court's holding rested solely on the lack of "solemnity" of the evidence, in that it was not an affidavit or certification,

and therefore was not the kind of "testimonial" evidence that falls within the protection of the Confrontation Clause. *Id.* at 103-04. That view was shared by no other justice.[1]

On the record here, the defense and prosecution alike have compelling arguments as to the purpose for which the Medical Examiner's investigator gathered evidence at the scene. Petitioner points out that he was questioned by homicide detectives within twelve hours of the death being reported and was therefore already under suspicion. Obj. to R. & R. 7, 45-46. Meanwhile, the Commonwealth argues that "medical examiner's reports . . . are created in any situation where cause of death cannot be determined, whether or not criminal activity is suspected or an individual is in police custody." Answer to Am. Pet. 76, ECF 25; *see Bullcoming,* 564 U.S. at 672 (Sotomayor, J., concurring) (finding blood-alcohol content report testimonial because it was "not a case in which the State suggested an alternate purpose, much less an alternate primary purpose, for the . . . report").

The first ground on which the *Williams* court based its decision rings hollow here, when one considers that the purpose of the expert's testimony in utilizing the lividity analysis was to establish a time of death, thus tying the defendant to the crime. But the second basis for the outcome in *Williams*, the purpose for which evidence was gathered, has greater force here when one considers that the Medical Examiner investigates every suspicious death pursuant to statute, not just cases where law enforcement has concluded a crime occurred and is considering suspects. 16 P. S. § 1237(b) (repealed 2018); *see* 16 P. S. § 1237(a)(1)-(11) (repealed 2018) (outlining eleven situations in which medical examiners are required to investigate deaths in Pennsylvania). The lividity analysis therefore cannot properly be considered "testimonial" under

---

[1] Commentators have noted that "Williams provides little guidance for lower courts, which will inevitably lead to inconsistent approaches, splits in the circuits, and the Court's quick return to this subject." David L. Faigman et al., *The Confrontation Clause and the Right of Cross-Examination*, 4 Mod. Sci. Evidence § 29:17 (2020-2021).

the plurality's reasoning. 567 U.S. at 84-85. Nor does it pass the test laid out in Justice Thomas' concurrence, as there was no evidence that it was either "a sworn []or a certified declaration of fact," which would give it the requisite degree of solemnity to fall within the scope of the Confrontation Clause. *Id.* at 103-04.

Although the splintered decision in *Williams* underscores the degree to which the law in this area is in flux, the conclusion that Dr. Perlman's testimony would not violate the Confrontation Clause under either framework laid out in *Williams* is not debatable. *See Anker Energy Corp. v. Consolidation Coal Co.*, 177 F.3d 161, 170 (3d Cir. 1999) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds.'" (internal citation omitted)); *Lambert v. Warden Greene SCI*, 861 F.3d 459, 470 (3d Cir. 2017) (citing J. Thomas's concurrence in *Williams* in analysis of Confrontation Clause issue).

In addition, Judge Rice concluded, and I agree, that even if one presumes error, it was harmless. Considering the factors laid out by the Supreme Court in *Delaware v. Van Arsdall*, I am ultimately persuaded that the "overall strength of the prosecution's case"—even in the absence of the lividity analysis—makes it so. 475 U.S. 673, 684 (1986). There was an abundance of evidence of Petitioner's guilt, including his admission that he and the victim engaged in intercourse the morning of the murder, coupled with the deceased showing vaginal injuries consistent with extreme force; forensic tests that rule out the homeowner as the source of sperm found on the victim, while not excluding Petitioner; the wounds on both Petitioner and the victim consistent with a struggle; and the pattern and practice testimony of three other women regarding assaults by the Petitioner, two of whom met him at the same nightclub as the victim

here.  *See* R. & R. 20; *Van Arsdall*, 475 U.S. at 681 (1986) ("otherwise valid conviction should not be set aside [for Confrontation Clause violation] if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt").

For the reasons set forth above, I therefore also adopt Judge Rice's recommendation that no certificate of appealability be issued, as reasonable jurists would not find this Court's disposition of Petitioner's claims debatable.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).

<u>  /s/ Gerald Austin McHugh  </u><br>
United States District Judge